[File No. 7080]

## WALTER E. BELT, Respondent, v. VERONICA BELT, Appellant.

(32 NW2d 674)

Opinion filed May 17, 1948.   Rehearing denied June 10, 1948.

724

*Lyche & Lyche,* for appellant.
*Day, Lundberg & Stokes,* for respondent.

CHRISTIANSON, Ch. J. This is an action for divorce. The trial court ordered judgment in favor of the plaintiff for an absolute divorce. After the judgment had been entered, the defendant applied to the court for an order requiring the plaintiff to pay to the defendant a certain sum to defray the costs and expenses on appeal from the judgment and to pay to the defendant certain sums for the support and maintenance of the defendant and the minor children issue of the marriage during the pendency of the appeal. The trial court denied the application and the defendant appealed from the order denying such application. She also appealed from the judgment. Both appeals were argued before this court at the same time.

The summons in this action was issued on January 29, 1947. After the summons had been issued and before service thereof, namely, on January 31, 1947, plaintiff's counsel applied to one of the judges of the District Court of Grand Forks County for an order to show cause. The judge issued an order to show cause, citing the defendant to show cause before the said court on February 10, 1947, "why the sum of One Hundred Twenty-five Dollars ($125.00) per month is not sufficient for her support and maintenance and for the support and maintenance of the children during the pendency of this action, and why the Plaintiff should be required to pay to the Defendant any sum for attorney's fees until the matter has been tried upon its merit."

The summons and complaint in the action and the order to show cause and the affidavit of the plaintiff in support of such order to show cause were served upon the defendant on February 4, 1947. The application was heard pursuant to the order to

show cause and thereafter on February 28, 1947, the court made an order that the plaintiff pay to the Clerk of the District Court of Grand Forks County for the defendant the sum of $125.00 each and every month until the further order of the court, and that the plaintiff pay to the Clerk of the Court for the defendant's attorneys the sum of $100.00 as and for "temporary" attorneys fees.

The action came on for trial on August 20, 1947, and on September 16, 1947, the trial court made and transmitted to the attorneys for the respective parties a memorandum decision wherein he announced that he had reached the conclusion that the plaintiff should be granted a decree of divorce; that the plaintiff shall pay to the defendant the sum of $125.00 per month for the support of the defendant and the three children issue of said marriage,—such payments to be made on or before the 15th day of each month and to continue until remarriage of defendant or the further order of the court; that the defendant shall have the sole use of the home in East Grand Forks, Minnesota; that the defendant shall have all the household furniture, fixtures, and utensils, etc. contained in said home, except any personal belongings of the plaintiff, such as personal clothing, jewelry, and keepsakes; that the defendant shall have the care, custody and education of the three children issue of said marriage subject to the right of the plaintiff to visit said children at proper times; that the plaintiff shall pay to the defendant's attorneys the sum of $100.00 for attorney's fees in addition to the amount formerly ordered to be paid by the order made February 28, 1947; and that neither of the parties shall remarry except to each other for a period of three months from the date of entry of judgment herein.

Findings of fact, conclusions of law, and order for judgment in conformity with the memorandum decision were signed by the trial judge on October 15, 1947, and filed in the office of the Clerk of the District Court on October 29, 1947. Judgment was entered on that same day. The judgment required that the plaintiff pay to the defendant the sum of $125.00 per month for the support of herself and the three children issue of the mar-

riage. The judgment provided that such payments should be made on or before the 15th day of each month and continue until the remarriage of the defendant or until the further order of the court and that plaintiff should pay to the defendant's attorney the sum of $100.00 for attorney's fees in addition to the amount directed to be paid for attorney's fees by the order made February 28, 1947. After the judgment had been entered the defendant applied to the court for an allowance for appeal expenses and for support and maintenance during the pendency of the appeal. The application came on for hearing pursuant to an order to show cause. Both parties appeared by their respective counsel upon the hearing. On November 7, 1947, the trial court signed a memorandum decision wherein he stated that "plaintiff has paid and defendant has accepted two payments of alimony made in compliance with the said judgment," and from this the court concluded that the defendant had voluntarily accepted benefits under the judgment and therefore had waived the right to appeal therefrom; and that consequently the application for an allowance for appeal expenses and temporary alimony during the pendency of the appeal should be denied. On November 17, 1947, the trial court made an order denying defendant's application. Thereafter, the defendant duly perfected appeals both from such order and from the judgment. On the appeal from the judgment she demands a trial anew in this court.

As has been pointed out, under the order made February 28, 1947, the plaintiff was required to pay to the defendant $125.00 per month for the support of the defendant and the children. In the judgment there was also allowed the same amount for the support of the defendant and her children as had been allowed in the former order, namely, $125.00 per month. The transcript of the proceedings had upon the trial discloses that at the very outset of the trial defendant's counsel called attention to the fact that the plaintiff was in default in the payment of temporary alimony which fell due August 15, 1947, and he insisted that the trial should not proceed while the plaintiff was

in default. The trial court, however, directed that the trial proceed.

The record discloses beyond any doubt that the plaintiff made no payments and the defendant accepted no payments under the judgment. The only payments made by the plaintiff and accepted by the defendant were such as were payable and paid pursuant to the provisions of the order of February 28, 1947, and all such payments were made and received before the judgment was entered. Specifically, the payments which the plaintiff made and the defendant accepted after the trial were as follows: The payment which under the order of February 28, 1947, became due August 15, 1947, and which the plaintiff paid on September 16th; the payment which under the order fell due September 15, 1947, and which the plaintiff paid on October 14, 1947; and the payment which fell due October 15, 1947, and which the plaintiff paid on October 24, 1947. So the reason assigned by the trial court in his memorandum decision for denying the application for an allowance for appeal expenses and for support and maintenance during the pendency of the appeal did not exist. Upon the showing made the defendant was clearly entitled to a reasonable allowance for appeal expenses and for support and maintenance during the pendency of the appeal. Mosher v. Mosher, 16 ND 269, 113 NW 99, 12 LRA NS 820, 125 Am St Rep 654; 1 Nelson, Divorce & Annulment 2d ed pp 460 et seq. It is true the appeal from the judgment has been taken and perfected and the case argued in this court but this does not abrogate the right of the defendant to such allowance, or relieve the plaintiff of his obligations to provide these necessaries for his wife. Mosher v. Mosher, 16 ND at pp 276, 277, 113 NW at pp 101, 102, 12 LRA NS 820, 125 Am St Rep 654. According to the showing made the defendant was in need of the assistance for which she applied and was entitled to have the same awarded to her by the court. The order appealed from must be reversed.

This brings us to the appeal from the judgment. The complaint alleges two grounds for divorce,—extreme cruelty and desertion. The defendant interposed an answer which put in issue the allegations of the complaint and further set forth

certain acts of misconduct and cruelty on the part of the plaintiff. Such acts were alleged as a matter of defense. The defendant did not interpose a counterclaim or cross complaint as she might have done notwithstanding she is not a resident of this state. (See 17 Am Jur Divorce and Separation, pp 287–288, §§ 264, 265.)

Both plaintiff and defendant appeared and testified at the trial. The mother and a sister of the plaintiff and the oldest child of the parties also testified as did a near neighbor in East Grand Forks.

The trial court found in favor of the plaintiff on the charge of extreme cruelty but made no finding concerning the charge of desertion. The sole question presented on this appeal is whether the findings of the trial court and the judgment rendered pursuant thereto are in accord with and sustained by the evidence.

As has been said, the appellant has demanded a trial anew in this court. The judges who heard the case and who have joined in this opinion have read and weighed the evidence; and after due consideration thereof and giving due weight to the findings of the trial court have all reached the conclusion that the evidence does not warrant a finding that the defendant has been guilty of extreme cruelty to the plaintiff.

The plaintiff and defendant intermarried at East Grand Forks, Minnesota, in February 1936. They took up their residence in East Grand Forks and continued to reside there and live together as husband and wife until their separation in March 1943, and the defendant has continued to reside in the home in East Grand Forks thereafter and is still residing there. In 1945, the plaintiff came to Grand Forks, North Dakota, established a residence there and has since been a resident of North Dakota. There were born to the parties as issue of their marriage three children, who, at the time of the commencement of this action were respectively nine, six and five years of age. The parties separated about March 27, 1943, and have not lived together since. Apparently the principal disagreement and difficulty between the parties arose shortly before their separation. On his direct examination plaintiff testified: "Q. And did

you and the defendant get along while you were living together prior to your separation? A. Got along fairly well until four or five months before our separation."

It appears both from the testimony of the plaintiff and from the testimony of the defendant that one of the chief sources of dissension between them was what the defendant deemed to be a too friendly and intimate companionship between plaintiff and another woman. The plaintiff testified that he and his wife had quarrels concerning this particular woman; that these quarrels first started about February 1943; that at that time the woman in question lived "a couple of doors" from the then home of plaintiff and defendant in East Grand Forks, Minnesota; that the defendant told him that she did not want him to be "stepping around" with the woman in question. He testified further that he did not persist in so doing. The evidence shows that in the latter part of November 1942 the defendant was required to go to the hospital and undergo a serious operation. She returned home from the hospital about the middle of January 1943. The principal incidents which it is claimed constitute extreme cruelty are said to have occurred subsequent to this.

The plaintiff testified that the defendant accused him of illicit relations with other women; that she interfered with his business; that she was extremely jealous; that during February 1943 she kicked him and struck him; that she contacted the local draft board and as a result the plaintiff was reclassified so as to make him subject to the draft earlier than he otherwise would have been and earlier than others similarly situated; that after he entered the service she refused to permit him to see the children when he was home on furlough. No good purpose would be subserved by entering into a detailed recital of the evidence. In many particulars there is a direct conflict between the testimony of the plaintiff and that of the defendant. The defendant denied that she interfered in plaintiff's business. She denied that she ever kicked him or struck him. She testified that the plaintiff struck her, and in this she was corroborated directly by her daughter and by plaintiff's sister. She admitted that she had accused plaintiff of improper relations with a certain wo-

man; but asserted that she had made no such accusation with respect to any other woman. While the evidence is not sufficient to establish illicit relations between the plaintiff and the woman mentioned by the defendant, there is ample evidence of such conduct as might reasonably have lead the defendant to suspect that such relations did in fact exist.

The defendant was called for cross examination as an adverse party. (ND Rev Code 1943, § 31–0202.) On her examination by plaintiff's counsel she admitted that she went to see one Mr. Dunlevy of the draft board concerning the plaintiff. She stated plaintiff was not supporting her. Thereafter, defendant's counsel offered in evidence a written statement which, it was stated, had been signed and verified by the defendant and presented by her to the draft board. Such statement was excluded on objection of plaintiff's counsel. In sustaining such objection the trial court stated that the statement "is practically a restatement of what is in the testimony." We have no means of knowing what was contained in the statement other than as may be inferred from the statement by the trial judge. There is nothing to show that the defendant made any untrue statement to the draft board. It was for the draft board to determine whether the facts were such as to justify or require that the plaintiff be reclassified and removed from the deferred status which apparently he formerly occupied. Presumptively, the board did its duty and nothing but its duty. There is nothing here to show that it did otherwise. The fact that the board's action may have resulted from information received from the defendant cannot be said to be extreme cruelty constituting a ground for divorce.

As said, we are agreed that the evidence does not warrant or sustain the finding against the defendant of extreme cruelty or warrant the rendition of judgment in favor of the plaintiff for a divorce.

The order appealed from is reversed and the trial court is directed to determine defendant's application for appeal expenses and for support and maintenance during the pendency of the appeal on the merits and to make such allowance as is just and reasonable.

The judgment appealed from is reversed and the cause is remanded to the District Court for further proceedings conformable to the law and with permission to the parties, if either of them so desires, to file amended or supplemental pleadings.

BURKE and NUESSLE, JJ., and GRIMSON and MILLER, District Judges, concur.

BURR and MORRIS, JJ. did not participate.

CHRISTIANSON, Ch. J. Plaintiff has petitioned for a rehearing. The petition asserts as ground for a rehearing that "the Supreme Court has overlooked a controlling principle of law long established in the state of North Dakota on appeal in failing to give due weight to the decision of the trial court and the findings of the trial court on the* facts." The rule to which reference is made was not overlooked, it was recognized and applied. In the former opinion we said:—"The judges who heard the case and who have joined in this opinion have read and weighed the evidence; and after due consideration thereof *and giving due weight to the findings of the trial court* have all reached the conclusion that the evidence does not warrant a finding that the defendant has been guilty of extreme cruelty to the plaintiff."

The statute under which the appeal from the judgment was taken provides that on such appeal "The Supreme Court shall try anew the questions of fact specified in the statement or in the entire case, if the appellant demands a retrial of the entire case,". ND Rev Code 1943, 28–2732.

In this case the defendant demanded a retrial of the entire case in this Court. This made it encumbent upon this Court "to try anew the questions of fact in the entire case." ND Rev Code 1943, 28–2732; Englert v. Dale, 25 ND 587, 597, 142 NW 169, 173; Merchants Nat. Bank v. Collard, 33 ND 556, 565, 566, 157 NW 488, 491, 492. See also Rindlaub v. Rindlaub, 19 ND 352, 394, 125 NW 479, 498; Hoellinger v. Hoellinger, 38 ND 636, 166 NW 519. On an appeal for trial de novo the case is not tried anew in the sense that proceedings are had as though

no trial had been had. There is no new evidence or any evidence adduced in the Supreme Court. The case is tried and must be decided upon the record of the trial had and the evidence adduced in the district court. On such appeal, however, the Supreme Court has the power and it is made its duty to review and weigh the evidence that was adduced upon the trial and transmitted to the Supreme Court as a part of the record on appeal, and to "find the facts for itself" (Doyle v. Doyle, 52 ND 380, 389, 202 NW 860, 863), "independently of the trial court's findings." Merchants Nat. Bank v. Collard, 33 ND at p 565, 157 NW at p 491.

While on such appeal the findings of the trial court are not accompanied by the strong presumptions of regularity and correctness applicable in cases where "a trial anew" of questions of fact may not be had, and while this Court is required to weigh the evidence and find the facts "independently of the trial court's findings", nevertheless in weighing the evidence and finding the facts the findings of the trial court must still have weight and influence with this Court "especially when based upon the testimony of witnesses who appeared in person before that court." Christianson v. Farmers' Warehouse Asso. 5 ND 438, 444, 67 NW 300, 302, 32 LRA 730, 732.

In this case each of the five judges who heard the case in this Court and who signed the former opinion read all the evidence that had been adduced at the trial and settled in the statement of the case, and transmitted to this Court. In considering and weighing the evidence, due weight was given to the rulings and findings of the trial court; and in exercising the judgment which the law requires the members of this Court to exercise, the members individually and collectively reached the conclusion that the evidence does not establish that the defendant has been guilty of extreme cruelty or that she has deserted the plaintiff.

In considering the petition for rehearing we have again reviewed the evidence and findings of the trial court and are all

agreed that the former opinion is correct. We adhere to the views expressed therein. A rehearing is denied.

BURKE and NUESSLE, JJ., and MILLER and GRIMSON, District Judges, concur.