Agnes **ROHDE**, Plaintiff and Appellant,

v.

Henry M. **ROHDE**, Defendant and Respondent.

No. 8441.

Supreme Court of North Dakota.

Nov. 22, 1967.

Rehearing Denied Dec. 8, 1967.

387

John J. Tebelius, Harvey, for plaintiff and appellant.

Mattson, Williams & Hovey, New Rockford, for defendant and respondent.

TEIGEN, Chief Justice.

This is an appeal from the judgment in a divorce action wherein the plaintiff-wife sought a divorce from the defendant-husband on the ground of desertion. The defendant counterclaimed praying that he be granted a divorce from the plaintiff on the ground of mental cruelty.

The parties were married August 8, 1934, and thereafter engaged in farming. Five children were born to them during the marriage, all of whom were of lawful age and self-supporting at the time this action was commenced. At the time of their marriage, the defendant-husband was engaged in ranching on a partnership basis. He owned no land, however, and brought only personal property, consisting of cattle and sheep, into the marriage. The plaintiff owned a one-half interest in 280 acres of farm land acquired by gift in 1933. The property contributed to the marriage by each of the parties appears to be approximately of equal value. In fact, the appellant in her brief so concedes. The parties lived on the ranch occupied by the defendant until 1936 when they moved to the 280-acre farm the plaintiff and her sister received as a gift from their uncle in 1933. The defendant farmed this property from 1934 onward for which he received a tenant's one-half share of the income. For reasons not disclosed by the record, the landlord's one-half share was paid to the plaintiff's father. This arrangement continued until the early 1940's. The real estate taxes for 1931 and following years were past due on the property and were paid by the defendant out of family funds in 1935.

In 1946, the plaintiff and her sister inherited 760 acres of farm land and certain personal property from their father in equal shares. The parties moved to this property in 1946 and thereafter resided there with the plaintiff's sister. During the marriage, the parties acquired three quarter sections (480 acres) of farm land through purchase. Approximately 188 acres of this land is tillable. There are no improvements on any of this land, except some fencing on one of the quarter sections. It appears this land is not very valuable, its market value being estimated at from $25 to $40 per acre. A sizable portion of the entire 1,520 acres was not tillable and was used as pasture and hay land.

All of the property was farmed or grazed by the parties until 1958 when the tillable acreage was placed under contract with the U.S. Department of Agriculture in the "soil bank" program. This contract was for a term of ten years and provided for annual compensation of $4,999.86.

From May until November of 1960 the defendant was a patient in the North Dakota State Hospital. When discharged

from the hospital, he returned to the farm where he remained until 1962. During this period he assisted in the limited farm work that was being done but was excluded from any management of the farm. In 1962, evidently at the suggestion of one of his sons, he left the farm to seek outside employment. Thereafter he returned only for social visits and at the request of the plaintiff to assist during the haying season. In his absence, the plaintiff had the use and benefit of all income from the farm, except for amounts paid on defendant's life insurance and hospitalization insurance. As well, the sum of $300 needed for his defense in this action was paid to him. At the time of trial, the defendant was employed as a caretaker of a mortuary at Minneapolis receiving a salary of $200 per month, as well as a furnished apartment. Prior thereto, he worked at various jobs, none of which paid enough to provide more than a meager subsistence. It appears the defendant has not fully recovered from his mental illness.

After a lengthy trial, the trial court awarded judgment of divorce in favor of the plaintiff-wife on the grounds of desertion and extreme cruelty. Extreme cruelty became an issue during the trial by implied consent. The defendant was awarded the three quarter sections of property acquired by the parties during the marriage, as well as one-half of the personal property. The balance of the property was awarded to the plaintiff. She appeals from the whole of the judgment demanding a trial de novo.

■ At the outset, we are confronted with a recurring problem. The plaintiff has appealed demanding a trial de novo. In her brief, and in argument, however, plaintiff raises only the question of the division of the real property. It is evident this is the only point upon which the plaintiff sought this appeal. We cannot, however, limit our inquiry to this point. Our statute, providing for appeals in actions tried to the court without a jury, provides in part:

* * * The supreme court shall try anew the questions of fact specified in the statement or in the entire case, if the appellant demands a retrial of the entire case, * * *.

Section 28–27–32, N.D.C.C.

In this case, plaintiff-appellant demanded a trial de novo and this makes it incumbent upon this court to "try anew the questions of fact * * * in the entire case." Belt v. Belt, 75 N.D. 723, 32 N.W.2d 674; Henry v. Henry, 77 N.D. 845, 46 N.W.2d 701.

In Hoellinger v. Hoellinger, 38 N.D. 636, 166 N.W. 519, this court said:

* * * It is the manifest duty of this court upon an appeal of this character to review the entire record for the purpose of disposing of the case according to the provisions of the statute under which the appeal is taken, and in divorce cases this duty rests upon the court, regardless of the desires of counsel or parties, that, if possible, the case be disposed of without affecting a judgment of divorce. * * *

Where a retrial is had in this court * * * and where it is not limited to the review of specific questions of fact, the entire record is here for review for the purpose of enabling the court to enter such judgment as is appropriate upon the whole record. * * *

Thus, here, we would be obliged to review the findings and the conclusions of the trial court to determine whether they are supported by the evidence, even had the plaintiff demanded trial de novo only upon the division of property. See Henry v. Henry, supra.

■ Our first task is to inquire into the adequacy of the grounds for divorce. The trial court granted the plaintiff a divorce on the grounds of desertion and extreme cruelty. We have considered and weighed the evidence and, after giving due weight to the trial court's findings, we conclude that the evidence warrants a finding of extreme cruelty on the part of the defendant.

The plaintiff testified to numerous acts of cruelty by the defendant throughout the years of marriage. This was corroborated by the testimony of the plaintiff's sister. As well, the defendant admits that he may have struck the plaintiff on certain occasions. There is also testimony that the defendant locked the plaintiff and her sister in the room and slept with a gun under his pillow. These acts took place, however, before the defendant was committed to the Jamestown State Hospital. It is not claimed by the plaintiff that he did any of these things after he left the hospital.

As regards desertion of the plaintiff by the defendant, the testimony is conflicting. The plaintiff testified that the defendant left home at the suggestion of his son, Vernon, and that she in no way attempted to force him to leave. She testified, however, that he left with her knowledge and permission.

As well, she admitted that she and their son, Vernon, had discussed the matter and that they both felt it might be best for all concerned if he left the farm. The record discloses that the defendant returned at the request of the plaintiff to assist in haying operations and, on one occasion, to put in cupboards. He also made some social visits to the farm.

Our statute defines desertion as follows:

Willful desertion is the voluntary separation of one of the married parties from the other with intent to desert:

\*   \*   \*   \*   \*   \*

4. Separation by consent, with or without the understanding that one of the parties will apply for a divorce, is not desertion;

\*   \*   \*   \*   \*   \*

Section 14–05–06, N.D.C.C.

Thus, it may be that a willful desertion by the plaintiff was not established in this case. Having held that extreme cruelty by the defendant has been shown, however, and this constituting an ample ground for divorce, we need not pass on the ground of desertion.

There being no other question as to the propriety of the divorce, we next turn to the division of property made by the trial judge. The plaintiff was given an equal undivided share of all the personal property and her entire interest in the property which she and her sister had acquired by gift and inheritance. The home of the parties is located upon this land. Her share of this real property amounted to 520 acres. The defendant was assigned three quarter sections (480 acres) acquired during marriage, as well as an equal undivided share of the personal property. The trial judge assigned his reasons for the division as follows:

Ordinarily the Court would make an equitable division only of the land acquired during the marriage but I am not going to do that this time. I feel that regardless of what Henry Rohde did, some of it not his fault, he would have 20 years or more invested in this land which was inherited in 1946, and 30 years or more in that which was deeded before the marriage from Ben Iverson. He said something about paying the taxes. I will not pay too much attention to that. I think the back taxes were paid from their joint efforts and joint funds, and I notice on the certified copy of the deed that there were apparently no taxes due at the time of transfer.

\*   \*   \*   \*   \*   \*

As I say, he has thirty years of his life invested in this so he has contributed to this property although he didn't buy it in the first instance.

For that reason I am going to require that as to personal property which was acquired during the marriage that this be divided half and half, and it consists mostly of machinery, as I understand it, and I think this should be appraised by competent appraisers before the division is made or sold at auction to the best ad-

vantage and the proceeds divided. He has gotten somewhat of a division—he didn't use it wisely—by reason of his investment of this $5,000. I don't think he has anything to show for it, has he?

\*　\*　\*　\*　\*　\*

Whatever personal property they have should be divided equally.

I think it would be very inequitable to require him after investing his lifetime to share this land acquired during the marriage with his wife in view of her extensive holdings otherwise with her sister; there are nine and a half quarters. It will be the order of the court that these three quarters acquired during the marriage be turned over to him.

The plaintiff contends on this appeal that it was inequitable for the court to award all of the real property acquired by joint effort during the marriage to the defendant. She contends that all of the real property so acquired must be divided equally and that the division here amounts to an abuse of judicial discretion. We have held on numerous occasions that when a divorce is granted, the court is required to make such equitable distribution of the real and personal property as may seem just and proper. Azar v. Azar, N.D., 146 N.W.2d 148; Ruff v. Ruff, 78 N.D. 775, 52 N.W.2d 107; Fleck v. Fleck, 79 N.D. 561, 58 N.W.2d 765; Fischer v. Fischer, N.D., 139 N.W.2d 845.

■ Our statute requires that the property be so distributed. Section 14–05–24, N.D.C.C. What constitutes an equitable distribution is not as clear, however, and depends upon the facts and circumstances of each particular case. Fischer v. Fischer, supra; Nicholson v. Nicholson, N.D., 126 N.W.2d 904; Ruff v. Ruff, supra; Agrest v. Agrest, 75 N.D. 318, 27 N.W.2d 697. In Fischer v. Fischer, supra, we adopted the following rule:

In determining a division of property between the parties in a divorce action, the court, in exercising its sound discretion, will consider the respective ages of the parties; their earning ability; the duration of the marriage; the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances as shown by the property owned at the time, its value at that time, its income-producing capacity, if any, and whether accumulated or acquired before or after the marriage; and such other matters as may be material.

This rule does not require that the division be equal in order to be an "equitable division." On a number of occasions we have approved divisions of property on an other than equal basis. McLean v. McLean, 69 N.D. 665, 290 N.W. 913; Agrest v. Agrest, supra; Ruff v. Ruff, supra; Dahl v. Dahl, N.D., 97 N.W.2d 844; Fischer v. Fischer, supra.

In Agrest v. Agrest, supra, this court said:

Among the "circumstances" of the case at bar which are logically relevant and material to the issue of "equitable distribution", under the statute (Section 14–0524), are those concerning the condition, needs and conduct of the parties, and, in particular, the respective earning powers as determined by the age, ability, experience and health of each spouse; and the amount of property owned by them, its nature, and the time and manner of its acquisition; in other words, the source from which it was derived, and how and when it was acquired, and whether the property is owned separately or jointly, and the equities of each spouse therein.

■ In the instant case, the trial judge took many of these circumstances into account as is evidenced by his oral decision quoted from earlier in this opinion. It seems evident from this statement that the trial court felt that the defendant was not

entirely to blame for his actions. In addition, the trial judge commented as follows:

I am taking into consideration that this man isn't in very good health and whether he will be able to earn and continue to earn, that is the big question, and he shouldn't come out of this absolutely stripped.

In view of the foregoing, we are unable to say that there was an abuse of discretion by the trial court in the division of real property. We have carefully examined the evidence and find that, under the facts and circumstances of this case, the division of the real property acquired during marriage on other than an equal basis is proper. The plaintiff on this appeal does not question division of the personal property; however, we find the division made by the trial court was also proper under the circumstances of this case.

On the basis of our review of the entire case, we determine that the judgment awarding divorce and the division of property, both real and personal, be affirmed.

PAULSON, KNUDSON and ERICKSTAD, JJ., concur.

STRUTZ, Judge (concurring specially).

I agree with the opinion of the majority, except as to the division of the property which was acquired during the marriage. Our statute provides that where a divorce is granted, "the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper". Sec. 14–05–24, N.D.C.C. I agree that this does not mean an equal distribution. In this case, the trial court did divide the small amount of personal property equally, but gave to the defendant all of the real property acquired during the marriage by the parties.

I believe that, under the above statute, an award of some part of the property to each of the parties is mandatory. But no part of the real property was given to the plaintiff. Although the court found that the defendant had given the plaintiff cause for a divorce, it gave to the defendant all of the real property.

Since an "equitable division" implies that each party be given some part of the property, both real and personal, I would modify the judgment of the trial court to give to the plaintiff one of the three quarters of land which the parties acquired during their marriage.