In re the MARRIAGE OF Eloise La Vonne
TJADEN and John B. Tjaden.

Upon the Petition of Eloise La Vonne
TJADEN, Appellee,

And Concerning John B. TJADEN,
Appellant.

No. 54939.

Supreme Court of Iowa.

June 29, 1972.

Whitesell Law Firm, Iowa Falls, for appellant.

Lundy, Butler, Wilson & Hall, Eldora, for appellee.

MASON, Justice.

Petitioner, Eloise La Vonne Tjaden, instituted proceedings to dissolve her marriage to John B. Tjaden under chapter 1266 Acts of the Second Session of the Sixty-third General Assembly which repealed chapter 598, The Code, 1966, and enacted a new dissolution of marriage procedure effective July 1, 1970, which now appears as chapter 598, The Code, 1971. She filed a petition in equity August 20, 1970, asking dissolution of the marital relationship, temporary support, permanent alimony, attorneys' fees and suit money. Respondent answered and filed counterclaim also seeking dissolution and a fair and equitable property settlement.

Hearing on the dissolution proceedings commenced April 5, 1971. Decision and order of the court was filed April 14. The trial court entered a decree April 15 in accordance with its decision and order terminating the marriage and adjusting the rights and obligations of the parties by making an award of property settlement, an allowance of alimony and attorney fees for petitioner.

Respondent appeals from that portion of the decree relating to the property settlement and allowance of alimony. The petitioner cross-appeals from that portion of the decree adverse to her.

I. May 20, 1971, before the record on appeal was filed in this court, petitioner filed motion to dismiss respondent's appeal which she amended June 8. The motion was argued orally before two members of this court and overruled June 14, 1971.

In written brief and argument filed in this appeal petitioner contends the order of June 14 was erroneous and urges us to reconsider and correct it by dismissing the appeal.

We find no reasons which persuade us the order overruling the motion to dismiss the appeal was erroneous. We therefore proceed to consider this appeal on its merits.

II. Respondent assigns one proposition for reversal. He contends the trial court abused its discretion by disregarding the criteria which should be considered in determining property settlements and allowances of alimony in dissolution proceedings and as a result the present decree in relation to the property rights and maintenance of the parties is unjust.

Section 598.21, The Code, 1971, provides:

"Alimony—custody of children—changes. When a dissolution of marriage is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be justified.

"Subsequent changes may be made by the court in these respects when circumstances render them expedient."

In support of the proposition assigned, respondent argues that although chapter 598, The Code, 1971, removes the fault concept as a standard for dissolution of the marriage, the "guilt" of a party remains a valid factor for consideration by the court in determining a just and equitable division of property or allowance of alimony.

Both parties urge this court to consider what, if any, consideration fault of the spouses is to be given in awarding property settlement, alimony or support payments under the revised statute.

■ The identical issue was before the court in In re Williams, Iowa, 199 N.W.2d 339 (filed June 29, 1972) and determined adversely to respondent's contention. In the cited case we determined from the legislative history of chapter 1266 that the intent and purpose of the revised statute was to eliminate the fault concept as a standard for granting dissolution of the marital relationship and held that not only the "guilty party" concept must be eliminated as a factor but evidence of the conduct of the parties insofar as it tends to place fault for the marriage breakdown on either spouse must also be rejected as a factor in awarding property settlement or an allowance of alimony or support money.

We further held evidence bearing on the fourth factor set forth in Schantz v. Schantz, 163 N.W.2d 398, 405, (Iowa 1968), as a suggested aid to trial courts in adjusting the rights and obligations of the parties upon judicial termination of the marriage relationship was not admissible on the issue of property settlement or allowance of alimony but that evidence relating to those remaining factors specified in that opinion was admissible for consideration on this issue if otherwise competent.

The holding in Williams settles the issue.

■ III. This statement from In re Williams, supra, defines our function on this appeal: "In equity it is our duty in a de novo review to examine the whole record and adjudicate rights anew on those propositions properly presented, provided issue has been raised and error, if any, preserved in the course of trial proceedings. In re Estate of Cory, 184 N.W.2d 693, 695 (Iowa 1971). While weight will be given to findings of trial court this court will not abdicate its function as triers de novo on appeal. Baker v. Starkey, 259 Iowa 480, 490, 144 N.W.2d 889, 895."

The parties, both high school graduates, were married June 28, 1969. It was the second marriage for respondent and the third marriage for petitioner. No children were born as the result of this marriage. During the marriage each had one minor child living with them and neither had adopted the child of the other. The respondent's child, Ronald, was 17 and petitioner's child, Camille, was ten.

The dissolution proceedings were instituted approximately 14 months after the marriage and the decree entered less than 22 months.

At the time of marriage respondent was employed by Northwestern Bell as a cable splicer. He owned a residence in Iowa Falls which he had purchased in 1963 for $19,500. There was an outstanding mortgage of approximately $11,000 which required monthly payments of $120 on interest, taxes, insurance and principal. He owned a 1964 Buick automobile which had been driven from 70,000 to 80,000 miles valued at $250. He also had $97 in E bonds and approximately $100 in a checking account with some miscellaneous furniture of little value. He had outstanding obligations in addition to the mortgage and a credit union loan.

Before her marriage to Tjaden petitioner had worked for nine years for Northwestern Bell selling advertising. She testified she was receiving between $10,000 and $12,000 a year from this employment but was forced to resign before her marriage by reason of a nervous breakdown which required hospitalization for three months. It is not entirely clear from the record how long petitioner had been unemployed before this marriage. In any event, she brought approximately $1700 in savings and about $75 in bonds into the marriage and most of the furniture in the residence occupied by the parties. This money was all spent on living expenses during the marriage except $200 which had been spent for the care of Camille since the separation. Petitioner had been receiving $50 a month child support before she married Tjaden which was discontinued after the marriage.

At the time of trial respondent's salary was $167.50 per week. Most of the basement of the residence was rented to four male college students who each paid $8.00 per week, nine months a year which respondent received. In 1970 he had a gross income of $11,415.94 consisting of salary, net rentals of $447.77, city council fees of $120 (he was a member of the city council) and interest of $6.69. This was reduced by federal and state income taxes and social security by $1705.36 leaving an income after taxes for 1970 of $9710.58. He was indebted $1707.48 to a credit union for money borrowed four or five years before trial. Payments on this account of $50 every two weeks were deducted from his paycheck. He had other miscellaneous debts totaling $282.

During the pendency of the dissolution proceedings respondent was enjoined from coming on the premises formerly occupied by the parties. He and his son were living with respondent's mother in the attic of her Iowa Falls residence.

Petitioner had worked for an advertising agency before being employed by Northwestern Bell. She once had a beauty operator's license no longer in effect. Her schooling was 24 years ago and she had never done beautician work. She had no savings nor income except the temporary support furnished by respondent.

Doctor Herbert E. Gude of Iowa Falls testified by deposition that petitioner definitely had an emotional problem and that it was his opinion she should be seen by some mental health clinic. He further expressed the opinion that in view of the emotional situation petitioner was not presently able to hold down a job.

Petitioner testified she had a hypothyroid condition, back pain, headaches and diarrhea as much as ten times a day, three days a week. The doctor testified she was going to have continued problems in the future. She cannot regain employment at the telephone company.

Based on this factual background the trial court, after dissolving the marriage, awarded petitioner all household goods at the residence of the parties in Iowa Falls; the right to occupy the residence except the basement apartments until April 1, 1979 or until she remarries, whichever first occurs; $100 a month as alimony payable $50 on the 5th and 25th of each month commencing April 25, 1971 and terminating April 1, 1979 or her remarriage, whichever first occurs; and $500 as an additional allowance for attorney fees. Judgment for the amounts awarded as well as for any installment of temporary support unpaid at the time of decree and costs of the action was entered.

The respondent was ordered to make the monthly payments required by the mortgage until petitioner's right to occupy the premises ceases. Petitioner was directed to quitclaim all her interest in the real estate to respondent at that time.

In addition to the alimony and required mortgage payments, respondent was ordered to pay all utilities connected with petitioner's occupancy of the residence including telephone bills but not including long distance charges.

Respondent was awarded the rentals from the basement apartments.

Respondent maintains this adjustment is so high it cannot be justified. Petitioner, on the other hand, insists it does not begin to meet her needs.

■ Examination of the record discloses that after taxes, union dues, life insurance premiums and fulfillment of his obligations under the decree, respondent will have approximately $5200 a year. As soon as the credit union loan is paid, which should be sometime in 1972, he will have approximately $6500 plus any wage increase.

Seldom is there enough money to meet all the needs, demands and desires of the parties upon judicial termination of the marriage. Trial courts in making awards

are limited by the extent of the assets available and the ability of one party to pay.

Looking at the court's decree in the light of our decision in In re Williams, supra, and those permissible factors now remaining as guidelines in Schantz v. Schantz, 163 N.W.2d at 405, we find no reason which would justify disturbing the award of property settlement or allowance of alimony made in said decree for the petitioner.

IV. Petitioner's application for attorney fees for services rendered in this appeal was submitted with the appeal.

 Counsel was awarded a total of $700 for services in the trial court. They have advanced $56.87 for printed brief and argument, $48 for out-of-pocket expense and have spent considerable time in preparing this appeal including presentation of oral argument. In making an additional award we simply determine what portion of counsel's fees should be paid by respondent without in any way attempting to place a valuation on those services or what counsel should be paid. Like the trial court we are also limited by respondent's ability to pay. Petitioner should be paid an additional allowance of $750 toward her attorneys' fees plus $104.87 for money advanced by them. Judgment shall be entered in the trial court for such additional amount.

Except as modified by the additional allowance made herein for attorney fees, the decree is affirmed.

The matter is therefore—affirmed on appellant's appeal and affirmed as modified on appellee's cross-appeal and remanded with directions.

All Justices concur, except REYNOLDSON, J., who concurs specially and MOORE, C. J., who joins in this special concurrence, and McCORMICK, J., who takes no part.

REYNOLDSON, Justice (concurring specially).

Although I still adhere to the reasoning expressed in the dissent of Justice Uhlenhopp and in my separate dissent in In re Williams, 199 N.W.2d 339 (Iowa 1972), I concur in this case because *Williams* now expresses the controlling law.

MOORE, C. J., joins in this special concurrence.